TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0488-KB

INQUIRY COMMISSION                                              MOVANT

IN SUPREME COURT

V.

JOE STEWART WHEELER                                      RESPONDENT

## **OPINION & ORDER**

This case is before the Court upon the Inquiry Commission's petition for temporary suspension of Joe Stewart Wheeler, pursuant to SCR 3.165(1)(a). Joe Stewart Wheeler's bar number is 75983 and his last known bar roster address is 338 West 4th Street, Russellville, KY 42276.

The Inquiry Commission alleges there is probable cause to believe that Wheeler is or has been misappropriating client funds and putting them to his own personal use. Wheeler has responded to the petition and given his explanation of the transactions, even conceding some guilt; but he insists that he has not maliciously committed any wrongdoing and that he has taken steps to rectify his admitted mishandling of funds. Moreover, Wheeler states he intends to resign his membership in the Kentucky Bar Association, although we have no record of whether he has taken steps to follow through on that promise.

The Office of Attorney General, Department of Criminal Investigations informed the Office of Bar Counsel of a criminal investigation into Joe Wheeler on October 12, 2021. The basis of this petition seems to be substantially derived from the results of that investigation. We are unaware if any charges have resulted from the investigation or if it is still on-going.

A common device in all the subsequent allegations is Wheeler's use of cashier's checks to siphon funds from accounts. For example, he is alleged to make a payment from an account to a third-party using cashier's checks. But he then returns the cashier's check to the bank and marks it as "not used." There is no proof yet in the record these checks were even sent to the ostensibly intended recipient. He then deposited the checks into a different account and used the funds for personal benefit.

The first basis surrounds the $300,000 settlement of the James Simmons personal injury suit. The Inquiry Commission alleges $207,000 personally benefitted Wheeler. Indeed, the Inquiry Commission states there is no indication from Simmons' bank records that he financially benefited from the settlement at all. Some examples of alleged misappropriation of these funds, attached to the petition by the Inquiry Commission, are $265 to Affordable Lawn Care; $37,000 to Big Boy Auto Sales; $3,644 to the Kentucky Department of Revenue; $18,302.42 to the United States Treasury; $6,452.32 to Mercedes Benz Financial Services; and $38,000 to Nova Wheeler, his wife, to fund the purchase of a Toyota vehicle.

Wheeler denies any wrongdoing. Instead, he explains that Simmons was a close family friend, with no wife or children of his own. Wheeler asserts that Simmons simply had no interest in the settlement money and wished Wheeler to use it for the benefit of his son and daughter. Wheeler also asserts that Simmons could not accept the money and still accept Medicaid benefits. As a result of his personal injury, Simmons had to live in an assisted-living facility. The cost per month was roughly $6,000, but due to Medicaid, Simmons had only to pay roughly $129 per month.

The second basis involves the now-deceased Margie Gibbs and the Margie Gibbs Trust. Wheeler was Gibbs' attorney and had settled two separate probate cases totaling $148,577.91. On September 15, 2017, the day Wheeler became executor of Gibbs' estate, he closed out some of her bank accounts and the bank issued a cashier's check of $4,498.96 to Wheeler. None of these funds were deposited into the Gibbs Trust account. Instead, $900 was used to purchase another cashier's check for an unrelated client of Wheeler's and the remaining $3,592.96 was cashed out and is unaccounted for. Additionally, Wheeler is alleged to have received $14,174 from the Gibbs Trust account by two withdrawals made payable to Wheeler and a cashier's check made payable to a Price Funeral Home for $5,824. That cashier's check was later deposited into the J. Stewart Wheeler, Attorney at Law, escrow account with "not used" written on the endorsement line. These funds were then used to pay off Wheeler's loans and credit cards.

Also, in regard to Margie Gibbs, Wheeler set up the Margie Gibbs Testamentary Trust totaling $60,000 that was meant to provide for Gibbs' disabled great-grandson. The Inquiry Commission alleges Wheeler has personally benefited from that account to the tune of $41,531; while Belinda Hoffman, the great-grandson's legal guardian, has only received $7,600 from the account. The Inquiry Commission alleges that several withdrawals totaling $32,000 from this account by Wheeler have been made without a supporting motion or court order. At least $10,000 is alleged to have been withdrawn from this testamentary account in order to repay a personal loan Wheeler had made to himself from the J. Stewart Wheeler, Attorney at Law, escrow account. Another $14,000 is alleged to have been siphoned off, again by a cashier's check, and used to make two payments to American Express. A third cashier's check in the amount of $6,000 was allegedly used to cover the personal expense of an $8,689.62 furniture set by Wheeler and his wife. Wheeler admits to inadvertently commingling some funds of the Gibbs account with his own, but denies any other wrongdoing.

The third basis alleged by the Inquiry Commission involves James Hines, son of Wheeler's now-deceased client Gary Mitchell Hines. As a result of a dispute between his heirs, $78,450 was deposited into the J. Stewart Wheeler, Attorney at Law, escrow account associated with Gary Hines. Wheeler had a $30,000 cashier's check issued and made payable to James Hines. The Inquiry Commission alleges Wheeler has misappropriated $18,320 out of the $30,000 through a practice of making cashier's checks payable to James Hines,

4

marking them as "not used," then depositing them, and repurchasing new cashier's checks for smaller amounts. Wheeler denies any wrongdoing in this matter, asserting he was without authority to deliver the checks to James Hines. Wheeler also states the case was settled between the estate and James; the latter being represented by counsel from Jefferson County.

Finally, several miscellaneous transactions are alleged. Most strikingly is the total of $342,990 received by Wheeler from a Kevin Robertson and Big Boys Auto Sales 2. The Inquiry Commission notes that several checks made by Robertson to Wheeler have the names of various of Wheeler's clients on the memo line. Wheeler asserts that Robertson would advance retainer fees on behalf of clients who could not afford to pay. In return, Wheeler would sign a promissory note agreeing to repay Robertson if any clients defaulted in paying him back.

When it "appears that probable cause exists to believe that an attorney is or has been misappropriating funds the attorney holds for others to his/her own use or has been otherwise improperly dealing with said funds[,]" then an order of temporary suspension may be issued by this Court. SCR 3.165(1)(a). Although Wheeler has advanced some plausible explanations for his handling of funds, this Court is not a fact-finding body in this instance. Given the standard of probable cause is something less than more likely than not, we cannot but conclude the Inquiry Commission has demonstrated probable cause exists to believe Wheeler has misappropriated client funds. Therefore, we

5

agree that Wheeler's license to practice law should be temporarily suspended pursuant to SCR 3.165(1).

ACCORDINGLY, IT IS HEREBY ORDERED:

1. Joe Stewart Wheeler is temporarily suspended from the practice of law in the Commonwealth of Kentucky, effective upon date of entry of this Order, pending further orders from this Court;

2. Disciplinary proceedings against Wheeler may be initiated by the Inquiry Commission pursuant to SCR 3.160, unless already begun or unless Wheeler resigns under terms of disbarment;

3. Pursuant to SCR 3.165(2), Wheeler is restricted from any further handling—including but not limited to deposits, withdrawals, transfers, or the issuing of checks and cashier's checks—of client funds which may now be in the J. Stewart Wheeler, Attorney at Law, Escrow Account and the Wheeler & Wheeler Escrow Account. "[W]hen served on any bank maintaining any account upon which said attorney may make withdrawals," this Order will "serve as an injunction to prevent said bank from making any further payment from such account or accounts on any obligation except in accordance with restrictions imposed by the Court . . . ." SCR 3.165(2);

4. Pursuant to SCR 3.165(5), Wheeler shall, within twenty days from the date of entry of this Order, notify in writing all clients of his inability to provide further legal services and furnish the Director of the Kentucky Bar Association with copies of all such letters;

6

5.  Pursuant to SCR 3.165(6), Wheeler shall immediately, to the extent reasonably possible, cancel and cease any advertising activities in which he is engaged.

All sitting. All concur.

ENTERED: March 24, 2022.

_____
CHIEF JUSTICE